UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| DICKEY'S BARBECUE PIT, INC. AND DICKEY'S BARBECUE RESTAURANTS, INC., | § § § § | CASE NO. _____ |
| Plaintiffs, | § § | |
| V. | § § | JURY DEMANDED |
| CELEBRATED AFFAIRS CATERING, INC., DAVID WIRTH, AND PAMELA WIRTH, | § § § § § | PLAINTIFFS' APPLICATION FOR TEMPORARY RESTRAINING ORDER AND FOR TEMPORARY INJUNCTIVE RELIEF |
| Defendants. | § | |

**PLAINTIFFS' APPLICATION FOR TEMPORARY RESTRAINING ORDER AND TEMPORARY INJUNCTIVE RELIEF**

Plaintiffs Dickey's Barbecue Pit, Inc. and Dickey's Barbecue Restaurants, Inc. (collectively "Plaintiffs") bring this application for temporary restraining order and temporary injunctive relief against Celebrated Affairs Catering, Inc. ("Celebrated"), David Wirth, and Pamela Wirth (collectively "Defendants") and would show:

1. This is an application for a TRO and a preliminary injunction arising out of trademark infringement, trademark dilution, unfair competition, breach of a franchise agreement involving confidential proprietary information and trade secrets.

2. Plaintiffs are duly formed Texas corporations with their principal place of business in Texas. Plaintiffs are Texas citizens.

3. Celebrated is a duly organized Arizona corporation with its principal place of business in Arizona. Celebrated is an Arizona citizen. Defendants David Wirth and Pamela Wirth are individuals residing in Arizona. Defendants David Wirth and Pamela Wirth are Arizona citizens.

4. Defendants David Wirth and Pamela Wirth can be served at 3735 E. Silver Buckle Place, Tucson, AZ 85739. Celebrated can be served through its registered agent, David Wirth, at 3735 E. Silver Buckle Place, Tucson, AZ 85739.

5. Jurisdiction in this court is proper pursuant to 28 U.S.C. §1331 because Plaintiffs are alleging violations of the Lanham Act, 15 U.S.C. §1051 *et seq*. and seeking damages for such violation. Jurisdiction is also permissible under 28. U.S.C. § 1332, because complete diversity exists between Plaintiffs and Defendants and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

6. Venue is proper in the United States District Court of the Eastern District of Texas pursuant to the Dickey's Barbecue Restaurants, Inc. Franchise Agreements, which contain a forum selection clause at paragraph 27.5, entitled Governing Law and Venue. Paragraph 27.5 provides in part that:

> ... ANY CONTROVERSIES, DISPUTES, OR CLAIMS ARISING OUT OF SUCH AGREEMENT SHALL BE BROUGHT, MAINTAINED AND CONCLUDED EXCLUSIVELY IN THE DISTRICT COURTS OF COLLIN COUNTY, TEXAS, OR IN THE UNITED STATES DISTRICT COURT FOR THE <u>EASTERN DISTRICT OF TEXAS, SHERMAN DIVISION,</u> . . . .

True and correct signed copies of the Franchise Agreements are attached as Exhibits "A" and "B" to the Declaration of Christine S. Johnson, which is attached itself as Exhibit "A" to this pleading and incorporated as if set forth in full herein.

<u>EXHIBITS LIST</u>

Plaintiffs attach the following exhibits to this Complaint and incorporate them herein as if set forth in full.

    a.    **EXHIBIT A:** Declaration of Christine S. Johnson, with attached exhibits as follows: Exhibit "A", May 22, 2013 Franchise Agreement; Exhibit "B", July 23, 2015 Franchise Agreement; Exhibit "C", trademark information from the Unite States Patent and Trademark Office; Exhibit "D", correspondence and Notice of Termination of Franchise Agreement.

    b.    **EXHIBIT B:** Tucson media publication, attached as "Exhibit C";

    c.    **EXHIBIT C:** Declaration of Donald Lepine, with attached photographs

7. Dickey's Pit is the exclusive owner of all trademark rights, and variations thereof, to the following live and valid trademarks:

| Reg. Number | Trademark |
|---|---|
| 4249263 | Dickey's Barbecue Pit |
| 1202218 | Dickey's Barbecue Pit (Design plus words - International) |
| 87002549 | Dickey's Barbecue Pit (Design Plus Words) |
| 4249207 | Dickey's Barbecue Pit Original Barbecue Rib Rub |
| 4249206 | Dickey's Barbecue Pit Original Barbecue Sauce |
| 3205121 | Dickey's Barbecue Pit Since 1941 (Design plus words) |
| 1980072 | Dickey's Barbecue Pit A Texas Tradition Since 1941 (Design plus words) |

8. Dickey's Restaurants is the exclusive owner of the Dickey's "System" a method of doing business and trade dress for franchised barbecue restaurants. The system includes building designs, pit designs, recipes, slogans, logos, symbols, methodology for doing business, menu items, advertising materials, bookkeeping systems, and operating policies, and standards for food and service quality.

9. Dickey's Pit, with its trademarks, and Dickey's Restaurants with its System, offer for sale barbecue based on recipes and processes dating back to 1941. Dickey's Restaurants' franchisees use trademarked rubs and sauces that Plaintiffs have used for decades. One or more of the trademarks appear on Plaintiffs' products, packaging, franchise stores, and advertising. The Dickey's Pit's trademarks are closely and uniquely associated with the Plaintiffs' brand and have

come to symbolize the quality that consumers expect from Dickey's Restaurants' franchises. Plaintiffs enjoy strong consumer loyalty, recognition, and goodwill in their trademarks and System.

10. Plaintiffs' claims emanate from Defendants' unauthorized production, manufacture, distribution, advertisement, promotion, marketing, offering for sale, and sale of barbecue, sides, rub, and sauce under Plaintiffs' trademarks and System. Upon information and belief, Defendants have been selling and marketing barbecue, sides, rub, and sauce directly to the consuming public through their franchised stores at 7850 N. Oracle, Tucson, Arizona 85704 and 5250 E. 22nd Street, Tucson, Arizona 85711, under the Plaintiffs' trademarks and System. *See* attached and incorporated photos showing the continued use of Plaintiffs' trademarks and System by Defendants after termination of Defendants' franchise, attached to Declaration of Donald Lepine as Exhibit "C."

11. Dickey's Restaurants and Defendants entered into a Dickey's Barbecue Restaurants, Inc. Franchise Agreement on or about May 22, 2013 (the "2013 Franchise Agreement") and on or about July 23, 2015 (the "2015 Franchise Agreement")(collectively referred to as "the Franchise Agreements."). Plaintiffs and Defendants executed the Franchise Agreements. *See* the 2013 Franchise Agreement attached and the 2015 Franchise Agreement attached as exhibits "A" and "B", respectively, to the Declaration of Christine S. Johnson, itself attached hereto as "Exhibit A".

12. The Franchise Agreements authorized Defendants to operate Dickey's Restaurants franchises in the Tucson, Arizona area. *See Id.*, "A" FRANCHISE AGREEMENT, page 2, Article I FRANCHISE, paragraphs 1.1-1.3, entitled GRANT, ACCEPTED LOCATION, ASSIGNED AREA and "Exhibit B" page 2, Article I FRANCHISE, paragraphs 1.1-1.3, entitled GRANT, ACCEPTED LOCATION, ASSIGNED AREA.

13. The Franchise Agreements also outline Defendants' obligations and responsibilities

to Dickey's Restaurants as a Franchisor as well as Dickey's Restaurants' obligations and responsibilities to Defendants as a Franchisee.

14. Defendants operated a Dickey's Barbecue Pit Restaurants at 7850 N. Oracle, Tucson, Arizona 85704 and 5250 E. 22nd Street, Tucson, Arizona 85711. Defendants continue to wrongfully operate the Restaurants in Tucson, under the Dickey's trademarks.

15. Defendants failed to pay their weekly royalty and marketing fund contributions due under the Franchise Agreement

16. Defendants, pursuant to the Franchise Agreements, agreed to pay a continuing nonrefundable royalty fee throughout the term of this agreement, equal to five percent (5%) of Net Sales . . . of your Restaurants, which shall be due and payable and shall be electronically drafted on your designated bank account on or before the Wednesday following the calendar week to which such payments relate. *See* Exhibit "A", Declaration of Christine S. Johnson, with attached "Exhibit A" of 2013 Franchise Agreement, Article 4, paragraph 4.2, entitled ROYALTY FEE and "Exhibit B", 2015 Franchise Agreement, Article 4, paragraphs 4.2, entitled ROYALTY FEE. Defendants also agreed to pay a continuing Marketing Fund contribution equal to four percent (4%) of Net Sales...to be paid weekly at the time and in the manner which royalty fees are paid. *See Id*., Exhibit "A", 2013 Franchise Agreement, Article 5, paragraph 5.8, entitled MARKETING FUND and "Exhibit B", 2015 Franchise Agreement, Article 5, paragraph 5.8, entitled MARKETING FUND.

17. Dickey's Restaurants notified Defendants that it had not received payment of the franchise royalty fees and marketing fund fees. Defendants had agreed pursuant to the Franchise Agreements to pay to Dickey's Restaurants a nonrefundable royalty fee based on a percentage of Net Sales as well as to pay a portion of his restaurant's Net Sales for Dickey's Restaurants' Marketing

Fund. *See* Exhibit "A," Declaration of Christine S. Johnson, with attached "Exhibit A" at page 6, Article 4, paragraphs 4.2 and 4.4 and Exhibit "B," page 6, Article 4, paragraphs 4.2 and 4.4.

18. Dickey's Restaurants advised Defendants that they were in "default" of the Franchise Agreements. Dickey's Restaurants notified Defendants that it would commence "formal default and termination procedures" of the franchise arrangement if payment of the fees did not occur. Dickey's Restaurants sent a formal notice of default letter to Defendants. Dickey's Restaurants terminated the Franchise Agreements.

19. By terminating the Franchise Agreements, Defendants would be (a) prohibited from reopening the franchise restaurants; (b) prohibited from opening a barbecue restaurant "within a five (5) mile radius of the Dickey's Barbecue franchise restaurants; and (c) prohibited and ordered to cease using "any of the confidential methods, procedures, and trade secrets associated with the Dickey's Restaurants' System." Termination also required Defendants to "immediately and permanently cease use of all signs, advertising materials, displays, furniture, fixtures and equipment, as such was proprietary to Dickey's."

20. Defendants were also obligated to return to Dickey's Restaurants all materials acknowledged to be Dickey's property, including but not limited to recipe books, Operations Manuals, records, files, instructions, correspondence, customer lists and other writings or electronic data related to operating the Dickey's franchise. *See* Exhibit "A," Declaration of Christine S. Johnson, attaching "Exhibit A" at Section 17.10 and Exhibit "B" at Section 17.10. Further, Defendants were prohibited from making copies or records of any data, except for the Franchise Agreements, correspondence with Dickey's Restaurants, and documents Defendants would need to comply with applicable law. *Id*.

21. Defendants continue to operate the stores at 7850 N. Oracle, Tucson, Arizona 85704 and 5250 E. 22nd Street, Tucson, Arizona 85711 as "Dickey's stores."

## TEMPORARY INJUNCTIVE RELIEF

22. Plaintiffs incorporate herein by reference the averments of the preceding paragraphs as though fully set forth herein.

23. If Defendants are allowed to continue to operate the Dickey's stores, Plaintiffs will suffer irreparable injury and harm to their good will and reputation. Such injury shall be both actual and imminent. Further, Plaintiffs have no adequate remedy at law, and based upon the facts, there is a substantial likelihood that Plaintiffs will prevail on the merits of this case. Attached and incorporated in this complaint are the affidavits with attachments of Christine Johnson and Donald Lepine, that support this application for injunctive relief.

24. The injury that Plaintiffs face outweighs any injury that Defendants may sustain. The balance of hardships as well as the effect on the public interest favors Plaintiffs' application for injunctive relief. Defendants intentionally breached the Franchising Agreements. The harm to Plaintiffs is imminent and ongoing.

25. If Defendants are allowed to continue to operate these Dickey's stores, Plaintiffs will suffer irreparable injury and harm to their goodwill and reputation by Defendants' use of Plaintiffs' trademarks and System. Accordingly, Plaintiffs seek a temporary restraining order and further injunctive relief that would prohibit Defendants from operating a Dickey's Barbecue Pit denominated restaurant in the Tucson, Arizona area or any other area of the United States. Plaintiffs further seek a temporary restraining order, preliminary injunction, and permanent injunction from this Court enjoining Defendants from utilizing any of the Plaintiffs' trademarks and System as well

as continuing to operate a Dickey's store in the Tucson, Arizona area that infringes on Plaintiffs' trademarks, trade dress, and System.

## MEMORANDUM OF POINTS AND AUTHORITIES

To obtain a TRO or a preliminary injunction, each of Plaintiffs must demonstrate that: (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in its favor, and (4) an injunction is in the public interest.[1]

The evidence to meet these four elements need not meet a trial or even a summary judgment standard.[2]  The burden of proof parallels that of a trial, e.g., once the plaintiff demonstrates a likelihood of prevailing, the burden shifts to the defendant to demonstrate a successful countervailing affirmative defense.[3]

From a general standpoint, the term "likely" in the first two elements does not equate to certainty.  A court does not have to be certain that the movant is more likely than not to succeed[4]; nor does the harm have to be occurring or certain to occur to show irreparable harm.[5]  When balancing the equities for the third element, a court looks to a party's harm from an improper grant

---

[1] *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008)

[2] *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981); *Byrum v. Landreth*, 566 F.3d 442, 446 (5th Cir.2009).

[3] *Gonzales v. O Centro Espirita Benficiente Uniao do Vegetal*, 5464 U.S. 418, 429 (2006).

[4] *Singer Mgmt. Consultants, Inc. v. Milgram*, 650 F.3d 223, 229 (9th Cir.2011).

[5] *Michigan v. United States Army Corps of Engineers*, 667 F.3d 765, 788 (7th Cir.2011)

or denial of injunctive relief.[6] Finally, the public interest normally proves a neutral factor when just the parties are primarily affected by the relief.[7]

## LIKELY TO SUCCEED

To succeed on the merits of its trademark-based claims, Dickey's Pit has to show two things: (1) ownership of a legally protected mark and (2) infringement, dilution or false designation of the mark.[8] Dickey's Pit only has to establish one of its trademark-based claims to obtain injunctive relief.[9]

Registration with the United States Patent and Trademark Office (USPTO) meets a prima facie showing of ownership.[10] The Court can take judicial notice under Federal Rule of Evidence 201 that Dickey's Pit is the registered owner of the trademarks in issue.[11] This satisfies the first element of ownership of a legally protected mark.

Infringement of a mark occurs when one uses:

> (1) any reproduction, counterfeit, copy, or colorable imitation of a mark; (2) without the registrant's consent; (3) in commerce; (4) in connection with the sale, offering for sale, distribution, or advertising of any goods; (5) where such use is likely to cause confusion, or to cause mistake or to deceive.

---

[6] *Winter*, 555 U.S. at 24.

[7] *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1139 (9th Cir.2009).

[8] *Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 329 (5th Cir.2008).

[9] *TGI Fridays, Inc. v. Great Northwest Restaurants, Inc.*, 652 F.Supp.2d 763, 767 (N.D.Tex.2009).

[10] *See Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 194 (5th Cir.1988); 15 U.S.C. § 1115(a).

[11] *Super-Krete Int'l, Inc. v. Sadleir*, 712 F.Supp. 2d 1023, 1029 n.1 (C.D.Cal.2010).

*Bos. Prof'l Hockey Ass'n v. Dall. Cap & Emblem Mfg.*, 510 F.2d 1004, 1009-10 (5th Cir.1975). The photos just taken of Defendants' restaurant, when compared to the trademark registration materials from the USPTO website, show that Defendants is using exact copies of Dickey's Pit's marks - this would meet element one for infringement.

The franchise termination correspondence from Dickey's Restaurants, the trademarks' license holder, to Defendants confirms that Defendants did, and does, not have Dickey's Pit's consent to use the marks, which would satisfy the second element. The termination correspondence set forth the Franchise Agreements defaults and Defendants continued refusal to cure those defaults. Additionally, the termination correspondence made clear that section 17.2 of the Franchise Agreement required Defendants to immediately and permanently cease use of Dickey's Pit's marks, and a failure to do so would constitute violations of the Lanham Act.

Courts have interpreted the "in commerce" phrase in element three to mean the use or display of a mark in the sale or advertising of a good or service in the ordinary course of a trade under element four.[12] The attached photos demonstrate that Defendants, even though their franchise has been terminated, continue to display the Dickey's Pit marks, continue to market their restaurant as Dickey's Barbecue Pit, and continue to use Dickey's Pit rubs, sauces, and packaging to sell barbecue to the public, which constitutes "use" in commerce connected to a sale of goods under the Lanham Act. This meets elements three and four.

The fifth element has an eight digits-of-confusion test: (1) the strength of the plaintiff's trademark, (2) mark similarity, (3) product similarity, (4) outlet and purchaser similarity, (5)

---

[12] 15 U.S.C. § 1127; *Choice Hotels Int'l, Inc. v. Patel*, 940 F.Supp.2d 532, 539 (S.D.Tex.2013).

advertising media similarity, (6) defendants' intent, (7) actual confusion, and (8) care exercised by potential purchasers.[13] When, as in this case, the defendant uses the plaintiff's exact mark, the digits-of confusion test can be met as a matter of law.[14] Notwithstanding the matter of law precedent, if one were to perform the digits-of-confusion test under our facts, the result would prove the same.

From the photographs, one cannot dispute that Defendants are using marks identical to those registered by Dickey's Pit with the USPTO. The strength of Dickey's Pit's marks, the registration of Dickey's Pit's marks, Defendants' use of identical marks, and Defendants' continued marketing under the name Dickey's Barbecue Pit is beyond cavil. Similarly, Defendants intentionally continue to sell barbecue to the same consumer base without any effort to mask their operating as a Dickey's Barbecue Pit. Defendants continue to infringe on Dickey's Pit's marks, even though they have been advised by repeated calls and correspondence to cease operating as a Dickey's Barbecue Pit and cease using the Dickey's Pit's marks because their franchise has been terminated.

Potential consumers of barbecue at Defendants' location have no readily available means to determine whether Defendants are properly operating as a Dickey's Restaurants franchise, because they continue to use Dickey's Pit's marks for signs, packaging, napkins, sauce, rub, and trade dress even though their franchise has been terminated. As the Eleventh Circuit has stated, "common sense compels the conclusion that a strong risk of consumer confusion arises when a terminated franchise continues to use the former franchisor's trademarks." *Burger King Corp. v. Mason*, 710 F.2d 1480, 1492 (11th Cir.1983). Dickey's Pit has established the fifth element of confusion for a trademark

---

[13] *Am. Rice*, 518 F.3d at 329.

[14] *Coach, Inc. v. Sassy Couture*, 2012 U.S. Dist. LEXIS 6364, 2012 WL 162366, at *5 (W.D.Tex.Jan. 19, 2012).

infringement claim.

A dilution claim has four elements: (1) plaintiff owns a distinctive famous mark; (2) defendant is using a mark in commerce that allegedly is diluting the famous mark; (3) the similarity between the defendant's mark and the famous mark gives rise to an association between marks; and (4) the association is likely to impair the distinctiveness or harm the reputation of the distinctive mark.[15] Dickey's Pit owns distinctive famous marks as evidenced by registrations at the USPTO and over 500 franchises nationwide. From the photos attached to this application for injunctive relief, no one can dispute that Defendants are using Dickey's Pit's marks in commerce or that Defendants are using the exact Dickey's Pit marks registered with the USPTO. Finally, Defendants use of the Dickey's marks after termination of their Dickey's Restaurants franchise, will likely harm the reputation of Dickey's Pit's marks because: (1) Defendants have no incentive to promote the franchise's value; (2) Dickey's Restaurants has no control over Defendants' operations; (3) Defendants perceive no obligation to comply with the standards and quality dictates of Dickey's Restaurants franchises; and (4) Defendants' unregulated conduct can and will dilute the value of Dickey's Pit's marks.[16]

Dickey's Pit has shown it owns legally protected marks and that those marks have been not only infringed but also diluted and falsely designated. Dickey's Pit need only show one statutory violation - infringement, dilution, or false designation - to satisfy this element. Dickey's Pit can

---

[15] *Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*, 507 F.3d 252, 264 (4th Cir.2007).

[16] *See Pizza Hut, Inc. v. White*, 2002 U.S. Dist. LEXIS 19930 **10-11(N.D.Tex. October 18, 2002).

demonstrate all three. Dickey's Pit in all likelihood will succeed on the merits of one or more of its trademark-based claims.

Dickey's Restaurants can similarly establish that it will prevail on its breach of the franchise agreement for the improper use of its Systems after termination, which will support injunctive relief allowed by the Franchise Agreement.

### IRREPARABLE HARM

Irreparable harm looks to whether the movant can accurately measure damages or be adequately compensated by money.[17] One cannot accurately measure damage to Dickey's Pit's or Dickey's Restaurants' goodwill, the disparagement of Dickey's Pit's marks or the loss of reputation from the continued improper use of Dickey's Pit's marks and Dickey's Restaurant's processes and systems.[18] Likewise, how can Dickey's be adequately compensated for the loss of control over its marks and the consumer confusion over restaurants that do not comply with the quality and standards ascribed to the Dickey's Pit's marks?[19]

Defendants' refusal to cease use of Dickey's Pit's marks and Dickey's Restaurants' System after termination of the franchise poses imminent irreparable harm to such intangibles as goodwill, reputation, trade secrets, and brand recognition. Quantifying such harm is neither practicable nor ascertainable. The only effective way to address ongoing harm from Defendants' trademark and

---

[17] *Simons of Warwick, Inc. v. Baccarat, Inc.*, 102 F.3d 12, 18 (1st Cir.1996).

[18] *See Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir.1991).

[19] *TGIF Friday's Inc.*, 652 F.Supp.2d at 771 (noting that a bad experience at one franchise store may cause a consumer to view all franchise stores poorly.)

System violations is to order Defendants to refrain from violating the trademarks and the System.

## BALANCING EQUITIES

Plaintiffs face irreparable harm from the ongoing trademark and System violations by Defendants that damage their goodwill, reputation, System, and trademarks. Whereas, Defendants face being barred from using trademarks and a System tied to terminated franchise agreements that they knowingly defaulted on and then refused to cure - Defendants want the benefits without any costs, which is inequitable. Any argument that Defendants will be harmed if denied the ability to use Dickey's marks and System will not shift the balance in Defendants' favor either; instead, such an argument favors the Plaintiffs by enhancing the value of the Plaintiffs' harmed reputation and goodwill.[20]

Dickey's' threatened loss of reputation, trade secrets, and goodwill outweighs Defendants' potential loss of use of trademarks as a terminated franchisee.

## PUBLIC INTEREST

The public has an interest in not being deceived or confused.[21] The public also has an interest in persons complying with federal statutes and regulations regarding trademarks.[22] Similarly, the public has an interest in businesses striving to achieve brand recognition through quality services and goods and then those businesses being rewarded for that brand loyalty through government

---

[20] *Id.* at 773.

[21] *See, e.g., S & R Corp. v. Jiffy Lube Int'l, Inc.*, 968 F.2d 371, 379 (3rd Cir.1992).

[22] *Quantum Fitness Corp. v. Quantum LifeStyle Ctrs., L.L.C.*, 83 F.Supp. 2d 810, 832 (S.D.Tex.1999).

protection of trademarks. Trademarks that facilitate the consuming public in making an informed decision on what businesses/franchises are worthy of brand loyalty support a public interest favoring Plaintiffs.

## CONCLUSION

Plaintiffs have demonstrated the four elements for injunction relief and just as in the *TGIF Fridays* (footnote 9) and Pizza Hut (footnote 16) restaurant franchise opinions, Plaintiffs are entitled to injunctive relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray that this Court enter judgment in Plaintiffs' favor and against Defendants as follows:

A. Defendants, their agents, servants, employees, officers, associates, attorneys, and all persons acting by, through, or in concert with any of them, are hereby temporarily, preliminarily, and permanently enjoined from using the Dickey's Pit trademarks or any marks, designs or designations confusingly or substantially similar thereto, including, but not limited to:

(1) manufacturing, importing, advertising, marketing, promoting, supplying, distributing, offering for sale, or selling any products which bear the Dickey's Pit trademarks or any marks/designs identical thereto, substantially indistinguishable from, substantially similar thereto, or confusingly similar thereto;

(2) engaging in any other activity that will dilute the distinctiveness of the Dickey's Pit trademarks; and

(3) committing any other act which falsely represents or has the effect of falsely

representing that the goods and services of Defendants are licensed by, authorized by, offered by, produced by, sponsored by, endorsed by, or in any other way associated with Dickey's Barbecue Pit, Inc. or Dickey's Barbecue Restaurants, Inc.;

  B. Ordering Defendants to deliver to Plaintiffs for destruction or other disposition all remaining inventory of Defendants' restaurants, or other merchandise bearing the Dickey's Pit's trademarks, Dickey's Restaurants' system, or any marks confusingly or substantially similar thereto, including all advertisements, promotional and marketing materials therefore, as well as the means of making these items, including signs;

  C. Ordering Defendants to supply Plaintiffs a list of all downstream purchasers of the product from Defendants' restaurants and provide all documents, including correspondence, invoices, and receipts, related to Defendants purchase of the product for Defendants' restaurants;

  D. Ordering Defendants to file with this Court and serve on Plaintiffs within ten (10) days after entry of the injunction a report in writing, under oath setting forth in detail the manner and form in which Defendants have complied with the injunction;

  E. Ordering an accounting by Defendants of all gains, profits and advantages derived from their wrongful acts;

  F. Granting such other relief as may be just and proper.

Respectfully submitted,

By: /s/ Lucas G. Radney
    John Holman Barr
    State Bar No. 01798700
    Lucas G. Radney
    State Bar No. 24058061
    M. Forest Nelson
    State Bar No. 14904625
    **BURT BARR & ASSOCIATES, L.L.P.**
    203 E. Colorado Boulevard
    Dallas, Texas 75203
    214/943-0012 (Telephone)
    214/943-0048 (Telecopier)
    jbarr@bbarr.com
    lradney@bbarr.com
    fnelson@bbarr.com

**ATTORNEYS FOR PLAINTIFFS DICKEY'S BARBECUE PIT, INC. AND DICKEY'S BARBECUE RESTAURANTS, INC.**