# United States District Court
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| DICKEY'S BARBECUE PIT, INC., | § | |
| DICKEY'S BARBECUE RESTAURANTS, | § | |
| INC. | § | |
| | § | Civil Action No. 4:17-CV-00127 |
| v. | § | Judge Mazzant |
| | § | |
| CELEBRATED AFFAIRS CATERING, | § | |
| INC., DAVID WIRTH, PAMELA WIRTH | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiffs' First Amended Application for Temporary and Preliminary Injunctive Relief (Dkt. #11). After considering the complaint, the application, and the arguments of counsel, the Court finds the motion should be granted.

## BACKGROUND

This dispute centers around Defendants' unauthorized production, manufacture, distribution, advertisement, promotion, marketing, offering for sale, and sale of Plaintiffs' trademarked barbeque, sides, rub, and sauce. Plaintiffs are the owners of the following trademarks:

| Reg. Number | Trademark |
|---|---|
| 1980072 | Dickey's Barbecue Pit A Texas Tradition Since 1941 (Design plus words) |
| 2878761 | A Texas Tradition Since 1941 Dickey's Barbecue Pit (Design plus words) |
| 3205121 | Dickey's Barbecue Pit Since 1941 (Design plus words) |
| 3237281 | Dickey's |
| 4249206 | Dickey's Barbecue Pit Original Barbecue Sauce |
| 4249207 | Dickey's Barbecue Pit Original Barbecue Rib Rub |
| 4249263 | Dickey's Barbecue Pit |
| 4579035 | Big Yellow Cup Club |
| 4631706 | Dickey's Barbecue Pit (Design plus words) |
| 5086496 | We Speak Barbecue |
| 87002549 | Dickey's Barbecue Pit (Design plus words - pending) |

| | |
|---|---|
| 1202218 | Dickey's Barbecue Pit (Design plus words - international) |
| 1183816 | Dickey's (International) |

(Dkt. #14, Exhibit D).

On May 22, 2013, and July 23, 2015, Defendants entered into franchise agreements with Dickey's Barbeque Restaurants, Inc. (collectively, the "Franchise Agreements"). As part of these agreements, Defendants operated two Dickey's Barbeque Pit Restaurants at 7850 N. Oracle, Tucson, Arizona 85704 and 5250 E. 22nd Street, Tucson, Arizona 85711.

On February 2, 2017, Defendants terminated the Franchise Agreements. Upon termination, the "Obligations Upon Termination or Expiration" clause in the Franchise Agreements prohibit Defendants from (1) reopening the franchise restaurants; (2) opening a barbeque restaurant within a five-mile radius of the Dickey's Barbeque franchise restaurants; and (3) using any of the confidential methods, procedures, and trade secrets associated with the Dickey's Restaurants' System. Termination also required Defendants to immediately and permanently cease use of all signs, advertising materials, displays, stationary, forms, and any other articles which display Plaintiff's marks.

On February 5, 2017, a representative for Plaintiffs visited each of Defendants' locations and documented the continued use of Plaintiff's trademarks.

On February 20, 2017, Plaintiffs filed a complaint (Dkt. #1). That same day, Plaintiffs filed an Application for Temporary Restraining Order and Temporary Injunctive Relief (Dkt. #2). The Court denied the application for lack of notice to Defendants (Dkt. #4). On February 28, 2017, Plaintiffs filed an Amended Complaint and their First Amended Application for Temporary and Preliminary Injunctive Relief (Dkt. #6; Dkt. #11). The Court granted a temporary restraining order on March 6, 2017, and set a hearing for the preliminary injunction on March 21, 2017 at 12:00 p.m. (Dkt. #21).

The Court held a preliminary injunction hearing on March 21, 2017 at 12:00 p.m. Defendants did not appear. At the hearing, Plaintiffs requested that the Court convert the Application for Temporary Restraining Order and Temporary Injunctive Relief into an application for preliminary injunction. The Court agreed.

As of the date of this order, Defendants continue to operate stores at 7850 N. Oracle, Tucson, Arizona 85704 and 5250 E. 22nd Street, Tucson, Arizona 85711.

**LEGAL STANDARD**

Under Rule 65 of the Federal Rules of Civil Procedure, "[e]very order granting an injunction and every restraining order must: (a) state the reasons why it issued; (b) state its terms specifically; and describe in reasonable detail . . . the act or acts restrained or required." Fed. R. Civ. P. 65(d). A plaintiff seeking a preliminary injunction must show: (1) a substantial likelihood of success on the merits; (2) a substantial threat that plaintiff will suffer irreparable harm if the injunction is not granted; (3) the threatened injury outweighs any damage that the injunction might cause the defendant; and (4) the injunction will not disserve the public interest. *Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 372 (5th Cir. 2008).

"A preliminary injunction is an extraordinary remedy and should only be granted if the plaintiffs have clearly carried the burden of persuasion on all four requirements." *Id*. "The denial of a preliminary injunction will be upheld where the movant has failed sufficiently to establish *any one* of the four criteria." *Black Fire Fighters Ass'n v. City of Dall.*, 905 F.2d 63, 65 (5th Cir. 1990) (emphasis in original) (citation omitted). Injunctive relief requires the applicant to unequivocally show the need for its issuance. *Valley v. Rapides Par. Sch. Bd.*, 118 F.3d 1047, 1050 (5th Cir. 2005). The movant has the burden of introducing sufficient evidence to justify the grant of a preliminary injunction. *PCI Transp., Inc. v. Fort Worth & W. R.R. Co.*, 418 F.3d 535,

545 (5th Cir. 2005). The party seeking relief must satisfy a cumulative burden of proving each of the four elements enumerated before a court can grant preliminary injunction. *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985).

**ANALYSIS**

Plaintiffs seek a temporary restraining order to restrain the Defendants from infringing on Plaintiff's trademarks. The Court finds that Plaintiffs have established all four elements necessary for a preliminary injunction on their trademark infringement claim.

*a. Likelihood of Success on the Merits*

To demonstrate a likelihood of success on the merits Plaintiff must present a prima facie case. *Daniels Health Scis., LLC v. Vascular Health Scis.*, 710 F.3d 579, 582 (5th Cir. 2013) (citing *Janvey v. Alguire*, 647 F.3d 585, 595–96 (5th Cir. 2011)). A prima face case does not mean Plaintiffs must prove they are entitled to summary judgment. *Byrum v. Landreth*, 566 F.3d 442, 446 (5th Cir. 2009).

Plaintiffs are likely to succeed on their trademark infringement claim. To prevail on a claim for trademark infringement, the registrant must show: (1) its mark was used in commerce by the defendant without the registrant's consent; and (2) the unauthorized use was likely to cause confusion, or to cause mistake or to deceive. *See* 15 U.S.C. § 1114(1)(a); *Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 329 (5th Cir. 2008). A franchisor may show that it properly terminated the contract purporting to authorize the trademarks' use, thereby resulting in the unauthorized use of the trademarks by the former franchisee. *See Burger King Corp. v. Mason*, 710 F.2d 1480, 1491–92 (11th Cir. 1983) ("[M]any courts have held that continued trademark use by one whose trademark license has been cancelled . . . constitutes trademark infringement."); *Petro Franchise Sys., LLC v. All Am. Props., Inc.*, 607 F. Supp. 2d 781, 788

4

(W.D. Tex. 2009) (same); 7-*Eleven, Inc. v. Puerto Rico-7, Inc.*, No. 3:08-CV-0140-B, 2009 WL 4723199, at *9 (N.D. Tex. Dec. 9, 2009) (same). "Registration of a mark with the PTO constitutes prima facie evidence of the mark's validity and the registrant's exclusive right to use the registered mark in commerce with respect to the specified goods or services." *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 237 (5th Cir. 2010) (citations omitted).

Plaintiffs have demonstrated that they have valid and protectable trademarks. Plaintiffs have registered their marks and can thus establish a valid and protectable trademark (Dkt. #13, Exhibit 3).

Plaintiffs have provided direct evidence that Defendants are using marks identical to Plaintiffs' marks without Plaintiffs permission (Dkt. #14, Exhibit C). Plaintiffs terminated the Franchise Agreements and thus revoked permission to use the marks in its February 2, 2017 termination letter (Dkt. #13, Exhibit 4a, 4b). "The Fifth Circuit follows a comprehensive 'digits of confusion' test to determine whether confusion is likely." *Petro Franchise*, 607 F. Supp. 2d at 788 (citing *Rolex Watch USA, Inc. v. Meece*, 158 F.3d 816, 829–30 (5th Cir. 1998)).[1] "However, a district court may confine its digits-of-confusion analysis to the determination that the marks used by the allegedly infringing party are the exact marks owned by the plaintiff and, if they are, find that confusion is likely." *Id*. (citing *Paulsson Geophysical Servs., Inv. v. Sigmar*, 529 F.3d 303, 310 (5th Cir. 2008)); *see also Mason*, 710 F.2d at 1492 ("Common sense compels the conclusion that a strong risk of consumer confusion arises when a terminated franchisee

---

[1] The Fifth Circuit considers the following "digits of confusion" in examining this issue: "(1) strength of the plaintiff's mark; (2) similarity of design between the marks; (3) similarity of the products; (4) identity of retail outlets and purchasers; (5) similarity of advertising media used; (6) the defendant's intent; (7) actual confusion; and (8) degree of care exercised by potential purchasers." *Am. Rice, Inc.*, 518 F.3d at 329. No one factor is dispositive, and a finding of likelihood of success does not even require a positive finding on a majority of these "digits of confusion." *Id.* (citing *Conan Props., Inc. v. Conans Pizza, Inc.*, 752 F.2d 145, 150 (5th Cir. 1985)).

continues to use the former franchisor's trademarks."). Here, Defendants are using identical marks to Plaintiffs' marks. The consumer is likely to be confused.

The Court will now turn to the question of whether Defendants' use of the marks is unauthorized, a question that "necessitates some type of showing that the franchisor properly terminated the contract purporting to authorize the trademarks' use." *Robertson*, 147 F.3d at 1038; *see also 7-Eleven, Inc.*, 2009 WL 4723199, at *9–10.

Plaintiffs terminated the Franchise Agreements on February 2, 2017 (Dkt. #13, Exhibit 4a, 4b). On January 24, 2017, Plaintiffs gave Defendants notice of default for failing to pay franchise fees under the Franchise Agreements (*See* Dkt. #13, Exhibit 4a at p. 1; Dkt. #13, Exhibit 4b at p. 2). Under the Franchise Agreements, Plaintiffs were required to cure within seven days following the date of written notice (Dkt. #12, Exhibit 1 at p. 33, Dkt. #13, Exhibit 2 at p. 35–36). Defendants did not cure, and Plaintiffs sent notice of termination on February 2, 2017. Plaintiffs validly terminated the Franchise Agreements, which authorized use of the trademarks.

The Court finds that Plaintiffs have shown a substantial likelihood of success on their trademark infringement claim.

### b. Substantial Treat of Irreparable Injury

Plaintiffs must demonstrate they are "likely to suffer irreparable harm in the absence of preliminary relief." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008). "[H]arm is irreparable where there is no adequate remedy at law, such as monetary damages." *Janvey*, 647 F.3d at 600. An injunction is appropriate only if the anticipated injury is imminent and not speculative. *Winter*, 555 U.S. at 22.

Plaintiffs are likely to suffer immediate and irreparable harm to their goodwill and reputation by Defendants' use of Plaintiffs' trademarks and systems. Plaintiffs cannot be adequately compensated for the loss of control over its marks resulting in loss of goodwill, reputation, or customer confusion. Further, the harm is actual and imminent in that Defendants are using Plaintiffs' marks without authorization. Plaintiffs have satisfied this element.

### c. Balance of Hardships

When deciding whether to grant an injunction, "courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'" *Winter*, 555 U.S. at 24 (citation omitted).

The threatened injury of loss of goodwill, reputation, and customer confusion to Plaintiffs greatly outweighs any damage to Defendants. Plaintiffs revoked Defendants' rights to use the Dickey's trademarks. Plaintiffs face immediate and irreparable harm to their goodwill and reputation by virtue of customer confusion. This harm cannot be fixed by monetary damages. On the other hand, Defendants have no apparent right to use Plaintiffs' marks. If Plaintiff is harmed, its only harm will be monetary, which can be remedied by Plaintiffs.

### d. Public Interest

"'In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction.'" *Winter*, 555 U.S. at 24 (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)). This factor overlaps substantially with the balance-of-hardships requirement. *Id.*

The public has an interest in not being deceived or confused and for persons to comply with federal statutes and regulations regarding trademarks. *See S & R Corp. v. Jiffy Lube Int'l,*

*Inc.*, 968 F.2d 371, 379 (3d Cir. 1992); *TGI Friday's Inc. v. Great Nw. Rests., Inc.*, 652 F. Supp. 2d 763, 773 (N.D. Tex. 2009). Plaintiffs have satisfied this element.

## CONCLUSION

It is therefore **ORDERED** that Plaintiffs' First Amended Application for Temporary and Preliminary Injunctive Relief (Dkt. #11) is hereby **GRANTED**.

It is further **ORDERED** that Defendants Celebrated Affairs Catering, Inc., David Wirth, and Pamela Wirth, their agents, servants, employees, officers, associates, attorneys, and those in active concert or participation with Defendants, are hereby **ENJOINED** from:

(1) manufacturing, importing, advertising, marketing, promoting, supplying, distributing, offering for sale, or selling any products which bear the Dickey's trademarks or any marks/designs identical thereto, substantially indistinguishable from, substantially similar thereto, or confusingly similar thereto;

(2) engaging in any other activity that will dilute the distinctiveness of the Dickey's trademarks;

(3) committing any other act which falsely represents or has the effect of falsely representing that the goods and services of Defendants are licensed by, authorized by, offered by, produced by, sponsored by, endorsed by, or in any other way associated with Dickey's Barbecue Pit, Inc. or Dickey's Barbecue Restaurants, Inc.; and

(4) from using, disposing of, alienating or doing or failing to do anything that would affect (a) the delivery to Dickey's Barbecue Restaurants, Inc. for destruction or other disposition all remaining inventory of the Dickey's Barbecue Restaurants, Inc. stores Defendants operated, or other merchandise bearing the Dickey's trademarks, or any marks confusingly or substantially similar thereto, including all advertisements, promotional and marketing materials therefore, as

well as means of making same including signs; and (b) the preservation of the equipment, furniture, and fixtures at the Dickey's Barbecue Restaurants, Inc. stores operated by Defendants.

It is further **ORDERED** that Defendants Celebrated Affairs Catering, Inc., David Wirth, and Pamela Wirth, their agents, servants, employees, officers, associates, attorneys, and those in active concert or participation with Defendants:

(1) Deliver to Plaintiffs for destruction or other disposition all remaining inventory of Defendants' restaurants, or other merchandise bearing the Dickey's Pit's trademarks, Dickey's Restaurants' system, or any marks confusingly or substantially similar thereto, including all advertisements, promotional and marketing materials therefore, as well as the means of making these items, including signs;

(2) To supply Plaintiffs a list of all downstream purchasers of the product from Defendants' restaurants and provide all documents, including correspondence, invoices, and receipts, related to Defendants purchase of the product for Defendants' restaurants;

(3) To file with this Court and serve on Plaintiffs within ten (10) days after entry of the injunction a report in writing, under oath setting forth in detail the manner and form in which Defendants have complied with the injunction; and

(4) To submit an accounting to Plaintiffs of all of Defendants' gains, profits, and advantages derived from the unauthorized use of Plaintiffs' trademarks, if any.

The Court finds that $500 security posted by Plaintiffs in order to secure a temporary restraining order is adequate to pay the costs and damages sustained by Defendants if found to be wrongfully enjoined. This bond shall remain in the registry of the Court until further order.

It is further **ORDERED** that unless terminated earlier, this preliminary injunction shall expire upon the issuance of a final decision by the Court in this case.

**IT IS SO ORDERED.**

**SIGNED this 22nd day of March, 2017.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE